

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

FILED

2005 MAR -8 P 1:39

U.S. DISTRICT COURT

*Connecticut Financial Center*
*157 Church Street*
*P.O. Box 1824*
*New Haven, Connecticut  06510*

(203) 821-3700

*Fax (203) 773-5376*

March 8, 2005

Donald R. Schechter, Esq.
Donald R. Schechter, P.C.
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415

Re:   **United States v. Jeffrey Lerman**
         **Criminal No.** *3:05 CR 50 (RNC)*

Dear Attorney Schechter:

This letter confirms the plea agreement entered into between your client, Jeffrey Lerman (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

The defendant agrees to waive his right to be indicted and to plead guilty to a one-count Information charging him with Conspiracy to Commit Criminal Copyright Infringement (Title 17 United States Code Section 506(a) and Title 18 United States Code Section 2319), in violation of Title 18 United States Code Section 371.  The defendant also agrees to waive any and all venue claims with regard to the Information.  He understands that to be guilty of this offense, the following essential elements must be satisfied:

(1)    that two or more persons entered into the unlawful agreement charged in the information;
(2)    that the defendant knowingly and willfully became a member of the conspiracy;
(3)    that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the information; and
(4)    that the overt act was committed to further some objective of the conspiracy.

## THE PENALTIES

The offense of Conspiracy carries a maximum penalty of five (5) years' imprisonment.  In addition, under 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of not more than three (3) years, to begin at the expiration of any term of imprisonment imposed.  The defendant understands that, should he violate any condition of supervised release during its term, he may be

required to serve a further term of imprisonment of up to two (2) years with no credit for time already spent on supervised release.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100.00 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of any fine amount not paid within fifteen (15) days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h), (i) and 3612(g).

Restitution

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. §3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless ordered otherwise by the Court.

Forfeiture

Under 17 U.S.C. § 506(b), the Court must order forfeiture of all infringing copies of copyrighted works and all implements, devices, and equipment (including computers and computer equipment) used in the manufacture, reproduction, or distribution of such infringing copies. The defendant agrees that all such items, which were seized from his custody or control on April 21, 2004, shall be subject to forfeiture and destruction or other disposition. The defendant represents that he is the sole owner of such items or that, to the extent he is not the sole owner, he obtained the items from third parties involved in the conspiracy whose whereabouts the defendant does not know. The defendant agrees to assist the government in its defense against any third-party claims that may be asserted with respect to the referenced items to be forfeited. The defendant further agrees to waive the provisions of Federal Rules of Criminal Procedure 7(c)(2) and 32.2, and to execute any additional papers or agreements as necessary to accomplish the purposes of this paragraph.

The defendant understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. §2465(b)(1).

## THE SENTENCING GUIDELINES

      i.      Applicability

      The defendant understands that, although application of the United States Sentencing Guidelines is not mandatory, the Sentencing Guidelines are advisory and the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case. See United States v. Booker, 125 S.Ct. 738, 543 U.S. ___ (2005). The defendant expressly understands that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated.

      ii.     Acceptance of Responsibility

      At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's Adjusted Offense Level under section 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, the Government intends to file a motion with the Court pursuant to section 3E1.1(b) of the Sentencing Guidelines recommending that the Court reduce defendant's Adjusted Offense Level by one additional level based on the defendant's prompt notification of his intention to enter a plea of guilty. This recommendation is conditioned upon the defendant's full, complete, and truthful disclosure to the Probation Office of information requested of the circumstances surrounding his commission of the offense, of his criminal history, and of his financial condition by submitting a complete and truthful financial statement. In addition, this recommendation is conditioned upon the defendant timely providing complete information to the Government concerning his involvement in the offense to which he is pleading guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendation on the reduction.

      The Government will not make these recommendations if the defendant engages in any acts which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government will not make this recommendation if the defendant seeks to withdraw his plea of guilty. The defendant expressly understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make this recommendation.

      iii.    Stipulation

      Pursuant to section 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not purport to set forth all of the

relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant expressly understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

      iv.     <u>Guideline Stipulation</u>

The Government and the defendant stipulate to the following guidelines calculation from the 2004 Sentencing Guidelines Manual based on the defendant's participation in the offense. The base offense level for Criminal Copyright Infringement under U.S.S.G. § 2B5.3(a) is eight (8). Fourteen (14) levels are added under U.S.S.G. §§ 2B5.3(b)(1) and 2B1.1(b)(1)(G) for a loss between $400,000 and $1,000,000. Two (2) additional levels are added under U.S.S.G. § 2B5.3(b)(2) because the offense involved the uploading of infringing items, and another two (2) levels are added under U.S.S.G. § 3B1.3 because the defendant used a special skill in a manner that significantly facilitated the commission of the offense, resulting in an adjusted offense level of twenty six (26). Assuming the defendant meets all of the requisite conditions, three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of twenty three (23). Based on the information available to the Government at this time, including the representations of the defendant, the defendant's Criminal History Category is I. At an offense level of twenty three (23) and a Criminal History Category of I, the range for imprisonment is 46 to 57 months and the fine range is $10,000 to $100,000.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline and fine ranges specified above. The defendant further expressly understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside the Guideline range or fine range set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to challenge or defend any sentencing determination, other than that stipulated by the parties, in any post-sentencing proceeding.

      v.     Waiver of Right to Appeal
                <u>or Collaterally Attack Sentence</u>

The parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by statute.

      vi.     <u>Information to the Court</u>

The Government expressly reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's

-4-

background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant expressly acknowledges that he is knowingly and intelligently waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, and the right to compulsory process for the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant understands and agrees that should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

<u>Waiver of Right To Post-Conviction DNA Testing of Physical Evidence</u>

The defendant understands that the Government has various items of physical evidence in its possession in connection with this case that could be subjected to DNA testing. The defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of physical evidence pursuant to 18 U.S.C. § 3600 and § 3600A in an attempt to prove his innocence. The defendant fully understands his right to have all the physical evidence in this case tested for DNA, has discussed this right with his counsel, and knowingly and voluntarily waives his right to have such DNA testing performed on the physical evidence in this case. Defendant fully understands that because he is waiving this right, the physical evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

## ACKNOWLEDGEMENT OF GUILT; VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant expressly acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek reasonable attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant further understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conduct, which forms the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

## NO OTHER PROMISES

Apart from any written Proffer Agreement, the defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court and filed in this case.

Very truly yours,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

MARIA A. KAHN
EDWARD CHANG
ASSISTANT UNITED STATES ATTORNEYS

KENNETH L. DOROSHOW
SENIOR COUNSEL, CCIPS, U.S. DOJ

-7-

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

JEFFREY LERMAN
The Defendant

3/8/05
Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

DONALD R. SCHECHTER, ESQ.
Attorney for the Defendant

3/8/05
Date

## STIPULATION OF OFFENSE CONDUCT

The defendant, Jeffrey Lerman ("defendant"), and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the information:

1. The defendant was a participant in the "warez scene" -- an underground online community comprised of individuals and organized groups who engage in the large-scale reproduction, modification, and distribution of copyrighted software over the Internet, in violation of federal copyright law. The leading warez participants and warez groups compete with one another to attain the reputation as the fastest, highest-quality provider of "pirated" software -- that is, computer software, games, movies, and music files that have been "cracked" (i.e., had their copyright protections removed or circumvented). The defendant was commonly known in the warez scene by his nickname "asdgadg," and also used the nicknames "kal1," "ht" and "reg," among others.

2. An individual's involvement in the warez scene can take place through a number of activities. Certain participants obtain access to copyrighted software, games, movies, and music; other participants crack the digital copyright protections on those works; and yet others test the pirated software – known as "warez" – for functionality and repackage the digital files for widespread dissemination. In addition, "couriers" distribute the pirated software to various file storage sites ("File Transfer Protocol" or "FTP" sites) on the Internet for others to access, reproduce, and further distribute. And yet others are responsible for the systems administration, site operation, or hosting of such FTP sites.

3. FTP is a communication protocol for transferring files between computers connected to the Internet. FTP sites – also known as FTP servers – are computers connected to the Internet that serve as large storage facilities for software or other digital files which, in turn, may be copied and downloaded by users of the site through the FTP protocol. In the warez scene, FTP sites are most often used to store and crack copyrighted software and other digital media and to host, collect, distribute, and trade illegal warez. These sites are not accessible to the general public. Access to FTP warez sites is typically controlled through a variety of security mechanisms. For example, a user is typically required to log on to the FTP site using a screen name and password approved by one of the system administrators for the FTP site. In most cases, the final level of authentication, which is done automatically, requires the user to attempt access to the FTP warez server only from a specific, authorized Internet Protocol ("IP") address previously supplied to the system administrator(s). Failure to meet any of the security requirements results in a denial of access to the FTP server.

4. Warez groups compete with one another to be the first to release new pirated software to the warez community for unauthorized reproduction and distribution worldwide. Preparing new pirated software for release and distribution to the warez scene generally requires a number of different steps. First, an individual known as a "supplier" will post an original copy of new computer software or other digital media to an FTP server on the

Internet known as a "drop site." Frequently, "suppliers" are company insiders, software testers, or reviewers who can provide final versions of new product before it is released to the general public. Once the new supply is posted to the "drop" site, another individual, known as a "cracker," retrieves the software and removes or otherwise circumvents its copyright protection controls, including serial numbers, tags, duplication controls, and/or security locks. Once successfully cracked, the software is tested and packed for final posting to the "drop site," where it is picked up by couriers for rapid distribution to other warez sites worldwide and, eventually, reaches public distribution channels such as publicly-accessible websites or online auctions. The entire process – from the initial appropriation of the copyrighted work to its worldwide pirated distribution – can, and typically does, occur within a matter of hours.

5.      Active participants in the release and distribution process are rewarded in a variety of ways, often with privileged access to large, non-public caches of pirated works on warez FTP sites. With this access, a user is able to download vast amounts of pirated software for personal use or further distribution.

6.      Within the warez scene there exists a handful of groups that enjoy a reputation as the fastest and most successful providers of illegal copies of digital works over the Internet. Of these elite warez groups, a group known as "Fairlight" has been one of the oldest and best-known in the warez scene worldwide. Fairlight (which is also known by the initials "FLT") has been in existence and has operated since at least the mid-1990s through April 2004, and is credited with having disabled or "cracked" copyright protection controls on some of the most popular and highest-valued computer games in the entertainment software industry.

7.      In addition to conducting its own software and media piracy activities directly, Fairlight, while not necessarily controlling them, serves as an umbrella organization to several other subsidiary warez groups, including "Kalisto," "Class," "Echelon," "GAME," and "ProjectX." Each of these subsidiary groups specializes in a particular type of pirated game software. For example, "ProjectX" specializes in the piracy of software for Microsoft's Xbox game console, whereas "Echelon" specializes in the piracy of DVD software for Sony's PlayStation2 console. Many, although not all, of the individual members of these subsidiary groups are also members of Fairlight. In all cases, the members of the subsidiary groups answer to the leadership (known as the "seniors"), who have the ultimate authority to control the membership and operations of each group.

8.      From in or about January 2002 through in or about April 2004, the defendant was a participant in the warez scene and, in particular, was a prominent member of the warez group known as "Kalisto." During that time frame, the defendant served as a "ripper" for the Kalisto group, which meant that he digitally manipulated the constituent files of pirated copies of computer games so that each game would fit on a single CD-ROM, the purpose of which was to – and did – eliminate or circumvent the games' copy protection controls and facilitate the further unauthorized distribution of the games over the Internet. From in or about June 2000 to in or about April 2004, the "Kalisto" warez group was

-10-

responsible for releasing to the warez scene pirated copies of over 500 well-known, copyrighted computer games, either before or on or about the date of their legitimate commercial release.

9.      By virtue of his membership in "Kalisto" and his service as a "ripper" for the group, the defendant had privileged access to several warez FTP sites from which he downloaded pirated software and other digital media.  Those sites included FTP servers known in the warez scene as DOH, Datastream ("DS"), Fireblade ("FB"), F00, Firesite ("FS") drop, Firesite ISO ("FSISO"), Firesite ISO Archive ("FSISO Archive"), and UCF (a/k/a UCFE, a/k/a "Pimp").

10.     Over the course of his participation in the conspiracy,  the defendant was aware that his co-conspirators uploaded pirated copyrighted works to the FTP warez sites identified as DOH, Datastream ("DS"), Fireblade ("FB"), F00, Firesite ("FS") drop, Firesite ISO ("FSISO"), Firesite ISO Archive ("FSISO Archive"), and UCF (a/k/a UCFE, a/k/a "Pimp") with the knowledge and intent that, through these sites, those copyrighted works would be further accessed, reproduced, and distributed by additional co-conspirators.  As of March 25, 2004, the "FSISO Archive" warez site alone contained more than 4,500 titles of pirated software and other digital media.

11.     In addition to the activities set forth above, since at least January 2002, in furtherance of the above conspiracy, the defendant downloaded more than 700 pirated copies of copyrighted works from the "UCF" site and other warez sites.  A substantial number of these software titles were computer and video games.  At all times relevant to this conspiracy, the defendant was aware that his and his co-conspirators' actions were unlawful.

12.     On or about April 21, 2004, as part of this investigation, the defendant's residence was searched by agents of the Federal Bureau of Investigation.  One computer, two computer game consoles, several memory devices, and numerous digital media belonging to the defendant and containing warez related material were seized from the defendant's residence.

13.     Based on the investigation to date, between $400,000 and $1,000,000 in losses are attributable to the defendant as relevant conduct.

The written stipulation above is incorporated into the preceding plea agreement. It is understood, however, that the defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.


JEFFREY LERMAN
The Defendant

3/8/05
Date


DONALD R. SCHECHTER, ESQ.
Attorney for the Defendant

3/8/05
Date


MARIA A. KAHN
Assistant United States Attorney

3/8/05
Date


EDWARD CHANG
Assistant United States Attorney

3/8/2005
Date


KENNETH L. DOROSHOW
Senior Counsel, U.S. Department of Justice

3/8/05
Date


-12-

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § §3663A.  The order of restitution may include:

1.      If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

      A. Return the property to the owner of the property or someone designated by the owner; or

      B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

            The greater of -

            (I) the value of the property on the date of the damage, loss, or destruction;  or

            (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2.      In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the court ordered restitution, the court may order that the conditions of its order of restitution be made  a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. See 18 U.S.C. §3614. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.